417 S.E.2d 120

**STATE of West Virginia ex rel. David R. KARR, Jr., Prosecuting Attorney for Jackson County, Petitioner,**

v.

**Honorable Charles E. McCARTY, Judge of the Circuit Court of Jackson County, and Helen J. Honaker, Respondents.**

**No. 20720.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1992.

Decided April 29, 1992.

David R. Karr, Sr., Ripley, for petitioner.

Chauncey H. Browning, Charleston, for respondent, Helen J. Honaker.

James B. McIntyre, McIntyre, Haviland & Jordan, Charleston, for respondent, Charles E. McCarty.

PER CURIAM:

David R. Karr, Jr., Prosecuting Attorney for Jackson County, West Virginia, has petitioned this Court for a writ of prohibition against the Honorable Charles E. McCarty, Judge of the Circuit Court of Jackson County. The petitioner contends that he was improperly disqualified from participating in the capacity of prosecuting attorney in a trial to be conducted before Judge McCarty. We disagree with the contentions of the petitioner and deny the writ of prohibition.

I.

The underlying criminal prosecution, presently pending before the Circuit Court of Jackson County, is styled *State of West Virginia v. Helen J. Honaker*, Criminal Case Number 91–F–20. On June 26, 1991, a Jackson County Grand Jury returned an eight-count indictment against the defendant, Ms. Honaker.[1] Evidence to be offered at trial against Ms. Honaker included tape recordings of phone conversations allegedly held between Ms. Honaker and other individuals.[2] The defendant filed a motion in limine questioning the admissibility of the tapes on several grounds, including their integrity. Mr. Howard Russell, an audiologist, was retained by the defendant to examine the tapes. Mr. Russell testified that he found several anomalies or peculiarities in the copies he had listened to and

---

1. The indictment charged the defendant with murder in the first degree, conspiracy to commit murder in the first degree, first degree arson, conspiracy to commit first degree arson, night-time burglary, conspiracy to commit night-time burglary, grand larceny, and conspiracy to commit grand larceny. Upon the defendant's motion, the murder and conspiracy to commit murder counts were severed for trial purposes, and trial was set for December 3, 1991.

2. The tape recordings of telephone conversations in which the defendant was a participant were secretly recorded by three neighbors of the defendant. The conversations were received on a radio scanner located in the residence of the closest of the neighbors involved. The scanner had been programmed by Ms. Kathy Judge to receive telephone conversations from the defendant's cordless telephone. A total of 108 ninety-minute tapes were used to record several hundred conversations.

concluded that their integrity was questionable.

During a November 21, 1991, hearing on the motion in limine, the petitioner was called as a witness for the defendant. The petitioner testified that he had been in exclusive possession of a small number of the 108 original tapes for a brief period of time. He had received the tapes from Ms. Kathy Judge, one of the individuals who had made the recordings. The petitioner had participated in making copies of the originals at the home of an owner of a speed tape copying machine. He had also transported some of the tapes to a Charleston, West Virginia, electronics shop to be copied. Additionally, the petitioner had personally made copies of some of the original tapes and had instructed Ms. Judge regarding the making of copies of other tapes. Thus, the petitioner had been in exclusive possession of some of the tapes at his residence, in his office, in his car, and at his father's residence.

The lower court ruled that the tapes were admissible but that the issue of their integrity could be presented for consideration by the jury. Based upon the petitioner's personal possession, handling, and copying of the original tapes, the defendant moved to disqualify the petitioner from further participation as an attorney for the State. That motion was granted by the lower court.

## II.

Rule 3.7(a) of the West Virginia Rules of Professional Conduct provides as follows:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or,

(3) disqualification of the lawyer would work substantial hardship upon the client.

The petitioner recognizes that due to the defendant's contention that the recordings lack integrity, the issue of such integrity will become a contested issue before the jury. The petitioner attempts to make a distinction, however, between the broad issue of the integrity of the tapes and the more narrow issue of whether the petitioner's own testimony "relates to an uncontested issue" within the meaning of Rule 3.7. The petitioner contends that the defendant has no specific evidence directly disputing the petitioner's credibility or his testimony indicating that the tapes were not altered while in his possession. Therefore, the petitioner reasons, while the general issue of integrity may be contested, his own individual statement with regard to the brief period during which the tapes were in his custody is not contested.

The defendant contends that the petitioner's involvement in the chain of custody of the originals of the tapes, the integrity of which is now called into question, justifies Judge McCarty's determination that disqualification was appropriate. The defendant also expresses a concern that the testimony of the individual who is actually prosecuting the case will be interpreted by the jury as extremely prejudicial to the defendant. Moreover, the defendant emphasizes that the petitioner had a more direct, personal involvement with the custody of the tapes than would normally be expected of a prosecuting attorney. As early as April 4, 1991, the petitioner had knowledge of the existence of the original tapes. As discussed above, he participated in making copies of the originals and had some of them in his exclusive possession for brief periods of time.

In *United States v. Trapnell*, 638 F.2d 1016 (7th Cir.1980), a prosecutor testified regarding a chain of custody of certain letters received by that prosecutor in the course of the investigation. That issue, however, was uncontested and was simply a matter of formality. *Id.* at 1025. Consequently, the Court held that, despite the general impropriety of counsel as witness, testimony on an uncontested issue was permissible. *Id.*

█ The petitioner's reliance upon our recent decision in *Smithson v. United*

*States Fidelity & Guar. Co.,* 186 W.Va. 195, 411 S.E.2d 850 (1991), is somewhat misplaced. In *Smithson,* we dealt with a situation wherein the defendant had called the plaintiff's attorney as a witness to be questioned on matters adverse to his client's interests. In syllabus point 1 of *Smithson,* we explained that "Disciplinary Rule 5–102 of the Code of Professional Responsibility and current Rule 3.7 of the Rules of Professional Conduct state that it is unethical for a lawyer representing a client to appear as a witness on behalf of the client except under very limited conditions." 186 W.Va. at 197, 411 S.E.2d at 852. Further, we stated the following in syllabus point 3 of *Smithson:*

> When an attorney is sought to be disqualified from representing his client *because an opposing party desires to call the attorney as a witness,* the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client.

*Id.* (emphasis added); *see also Garlow v. Zakaib,* 186 W.Va. 457, 413 S.E.2d 112 (1991).

In dealing with the issue of an attorney's testimony against his client in *Smithson,* we relied upon *Cottonwood Estates, Inc. v. Paradise Builders, Inc.,* 128 Ariz. 99, 624 P.2d 296 (1981). In *Cottonwood Estates,* the Arizona court recognized the potential abuses involved in a party's attempt to disqualify opposing counsel on the ground that he may be called as a potential witness. The court held that a lawyer is not automatically disqualified when he is to be "called other than on behalf of his client[.]" 624 P.2d at 302. Consequently, the Arizona court developed limitations for disqualification of an attorney called as a witness on behalf of an opposing party which we essentially adopted in syllabus point 3 of *Smithson.* Thus, our intent in *Smithson* was to address the issue of an attorney's testimony on behalf of an opposing party; in the present case, however, the prosecutor is more appropriately characterized as a witness for his own client in the State's establishment of a chain of custody. Thus, the principles announced in *Smithson* regarding an opposing party's attempt to call the attorney as a witness do not strictly apply.

A scenario more similar to the present case was encountered in *Pease v. District Court in and for Ninth Judicial Dist.,* 708 P.2d 800 (Col.1985). In *Pease,* two district attorneys were scheduled to testify as material witnesses at the petitioner's trial. One of those attorneys was to testify as a witness for the state regarding incriminating statements the petitioner had allegedly made to him. The Colorado court noted that it had "repeatedly held that a district attorney must be disqualified in a criminal case where he or a member of his staff will appear as a witness and give testimony of sufficient consequence to prevent a fair trial." *Id.* at 802. The Colorado court's "rationale for disqualification is that the defendant has a right 'to prevent the prosecutor from adding to the weight or credibility of the evidence by acting as both witness and officer of the court.' " *Id.* (citing *People v. District Court,* 192 Colo. 480, 481, 560 P.2d 463, 464 (1977). Concluding that the rule of imputed disqualification should be applied, the Colorado court held that disqualification of the entire staff of the district attorney's office was appropriate. *Id.* at 803.

Similarly, in *People v. Garcia,* 698 P.2d 801 (Col.1985), the Colorado court mandated disqualification of a prosecutor and the entire staff of the district attorney's office because the prosecutor had been endorsed as a witness for the prosecution regarding a bond violation charge. In explaining the rationale underlying the limitation regarding the prosecutor's role as a witness in a case where is he also acting as an advocate, the Colorado court stated the following:

> The basic reason for the limitation is to protect the integrity of the adversary process by separating the lawyer's role as an advocate from that of a witness. Advocacy is based on reason and is subject to objective evaluation, whereas tes-

timony 'is based on the witness' moral qualities and is evaluated in terms of individual credibility.' The separation of the witness from the adversary process and from the advocacy function of the prosecutor is essential and forecloses a prosecutor from combining argument with fact or from impermissibly injecting his personal belief into arguments before the jury.

*Id.* at 805–06 (citation omitted).

After hearing the multitude of evidence presented in the present case, the lower court found that the petitioner had custody of certain taped telephone conversations, participated in copying the tapes, and transported the tapes to various locations for copying purposes. Furthermore, the lower court found that the petitioner's testimony was necessary for trial. The lower court also determined that private special prosecuting attorney Scott Durig, having already served as special prosecutor in this case, would be appointed to act as special prosecuting attorney for Jackson County in the prosecution of this case.

The issue to be decided by the lower court was very simple: Did the testimony of the petitioner relate to an uncontested issue? If the answer is no, Rule 3.7 mandates disqualification. Thus, the legal principle is clearly stated in the rule, and all that remains is a factual determination regarding whether the issue is contested or uncontested. The lower court heard the evidence and determined that the issue to be addressed by the petitioner related to a contested issue. As discussed above, the issue of the integrity of the tapes became a contested issue when evidence was raised indicating that the tapes may have been altered. The petitioner's excessive personal involvement and contact with the originals, beyond that normally expected of a prosecutor, necessitates his testimony for the State in the establishment of a chain of custody. We find no error and therefore deny the requested prohibition.

Writ denied.