453 S.E.2d 361

**Dana Ruth MUSICK, Plaintiff Below, Petitioner,**

v.

**Lynn Allen MUSICK, Defendant Below, Respondent.**

No. 22344.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1994.

Decided Dec. 15, 1994.

Michael T. Clifford, Clifford, Mann & Swisher, L.C., Charleston, for petitioner.

Debra Kilgore, Burton & Kilgore, Princeton, for respondent.

WORKMAN, Justice:

This case arises upon certified question from the Circuit Court of Mercer County as a result of the Respondent's motion to disqualify the Petitioner's counsel from further representation in post-divorce proceedings. At the heart of this case is an acrimonious divorce as well as a close personal relationship between the Petitioner and her counsel which developed following the entry of the final divorce decree. The question presented is:

> Whether Plaintiff's counsel, John P. Anderson, should be disqualified from representing the Plaintiff in post divorce proceedings involving interpretation and enforcement of the Final Divorce Order and also involving a post divorce petition for visitation modification, when Plaintiff and counsel are involved in a personal relationship which developed after the entry of the Final Divorce Order and which includes a sexual relationship?

The circuit court answered the question in the affirmative.

## I.

The parties to this proceeding, Dana Ruth Musick, the Petitioner, and Lynn Allen Musick, the Respondent, were divorced by final order of the circuit court entered April 1, 1993. Petitioner was represented by John P. Anderson (hereinafter referred to as "counsel") in the divorce proceedings leading to the entry of the final order of divorce. Respondent was not represented by counsel

prior to the entry of the final order. The final divorce order ratified the parties' property settlement and agreement, which included an award of custody of their two infant children to the Petitioner, with visitation rights awarded to the Respondent.

Subsequent to the entry of the final order of divorce, the Petitioner and counsel embarked upon a close personal relationship which includes a sexual relationship. On October 15, 1993, the Respondent moved the court to disqualify the Petitioner's counsel from further representation, alleging, inter alia, that counsel's continued representation of the Petitioner in post-divorce proceedings while engaging in a sexual relationship with the Petitioner is contrary to ethical standards. Respondent contends, additionally, that in the context of this domestic relations proceeding, the relationship at issue has resulted in counsel becoming personally involved in the proceedings to the extent that his professional judgment is impaired and that counsel may be a necessary witness as a result.

A hearing on the motion to disqualify was held on December 9, 1993. At the conclusion of the hearing, the trial judge decided to certify the above-stated question to this Court.

## II.

Presently, there is no ethical standard under the West Virginia Rules of Professional Conduct which specifically addresses whether lawyers may ethically engage in sexual relationships with clients. Such a rule has been long in the making. Since 1987, the Committee on Legal Ethics [1] of the West Virginia State Bar has debated the necessity of a specific standard of conduct regarding attorney-client sexual relations. A subcommittee was appointed in 1992 to study the issue. After numerous drafts and debate, a proposal was approved by the Board of Governors of the West Virginia State Bar and forwarded to this Court for review and approval. Upon study and review, we rejected the proposal as flawed in many respects and directed the West Virginia State Bar to submit a new proposal with supporting docu-

mentation for the need for such rule. We also directed the Clerk of the Court to research and prepare a proposed rule regarding sexual relations between an attorney and client.

On October 26, 1994, this Court voted unanimously to approve proposed Rule 8.4(g) to the West Virginia Rules of Professional Conduct for a period of public comment to conclude on January 1, 1995. The proposed rule provides:

Rule 8.4 Misconduct

It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

(g) commence sexual relations with the client during representation if the sexual relations are the result of intimidation, fraud, misrepresentation, coercion, or undue influence by the lawyer, or the lawyer knows or reasonably should know that the client's ability to consent to sexual relations is impaired by the client's emotional condition, financial dependency, or some other reason; and a lawyer shall not engage in sexual relations with the client, under any circumstances, if the representation involves a domestic relations action, except adoption. For the purposes of this section, 'sexual relations' is defined as sexual intercourse or the touching of an intimate part of another person for the purpose of sexual arousal or gratification. Where a lawyer in a firm has sexual relations with a client, the other lawyers in the firm shall not be subject to discipline solely because of such sexual relations. Provided, however, that no person shall have standing to initiate a disciplinary complaint pursuant to this rule or assert this rule in any context or any forum including, but not limited to, any court in this State, except the aggrieved client, and any disciplinary complaint shall be dismissed or disciplinary investigation terminated immediately if the aggrieved client withdraws the complaint.

 Clearly, it is a better practice for attorneys not to engage in sexual relation-

---

1. The Committee is now called the Lawyer Disciplinary Board.

ships with any client in any type of case.[2] Since no existing provision of the West Virginia Rules of Professional Conduct specifically prohibits a lawyer/client sexual relationship, we find that a lawyer's conduct of engaging in sexual relations with a client is not, in and of itself, a breach of professional responsibility at this time.[3] However, other rules of professional conduct may be violated by a lawyer's sexual relationship with his client.

### III.

■■■ At the outset, we note that in *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991) this Court held that a circuit court judge has the inherent authority to do what is reasonably necessary for the administration of justice, and thus may disqualify a lawyer from representation in a case where that lawyer's representation may be in violation of the West Virginia Rules of Professional Conduct.[4] Specifically, we held that a circuit court judge may disqualify a lawyer where the lawyer's representation in the case presents a conflict of interest or where the lawyer will be a material witness. *Id.* at 461–462, 464, 413 S.E.2d at 116–117, 119. Before the trial court disqualifies a lawyer on the grounds that a lawyer's representation may conflict with ethical conduct, however,

an adequate record must be made. *Id.* at 465, 413 S.E.2d at 120.

Respondent directs our attention to Formal Opinion Number 92–364 of the American Bar Association ("ABA") Standing Committee on Ethics and Professional Responsibility ("the committee"). In that opinion the committee recognized that no provision in either the ABA Model Rules of Professional Conduct or the ABA Model Code of Professional Responsibility addresses or specifically prohibits sexual relationships between lawyer and client. *See* ABA Comm. on Ethics and Pro.Resp., Formal Op. 92–364 (1992). The committee went on to find:

> However, there are several provisions of the Model Rules that may be implicated by a sexual relationship, particularly one that arises after the formation of the attorney-client relationship. First, because of the dependence that so often characterizes the attorney-client relationship, there is a significant possibility that the sexual relationship will have resulted from exploitation of the lawyer's dominant position and influence and, thus, breached the lawyer's fiduciary obligations to the client. Second, a sexual relationship with a client may affect the independence of the lawyer's judgment. Third, the lawyer's engaging in a

---

2. Thus, it is tempting to adopt an ethical standard which would prohibit such relationships with clients. However, due to the complexity of human relationships and the myriad unique factual situations which may arise, it is a difficult proposition to write a rule which is fair and equitable under all circumstances. For instance, should a lawyer be precluded in all instances from representing a spouse? Should a lawyer be precluded in all circumstances from representing a person who he has never previously represented, but with whom the lawyer has maintained a long-term relationship which includes a sexual relationship?

3. It should be noted that the rule only enjoys proposed status. It may not even be the rule permanently adopted as public comments which are received as well as a final examination by the Supreme Court could result in a rule with different parameters. Thus, it cannot be applied at this time.

4. In *Garlow*, attorneys Charles G. Garlow and David L. Grubb instituted civil proceedings based on allegations of retaliatory discharge against Charles G. Brown, former attorney general.

Plaintiffs Garlow and Grubb were represented by attorneys Elizabeth Pyles and Walt Auvil. Attorney Auvil had been employed in the Office of Attorney General while Brown served as attorney general. Defendant Brown moved to disqualify plaintiffs' attorneys contending that while employed with the office of attorney general, attorney Auvil worked closely with the division of consumer protection in which both plaintiffs had been employed, and as such was intimately acquainted with issues related in the action before the court. The trial court disqualified plaintiffs' attorneys, finding continued representation would create an appearance of impropriety, the likelihood of a potential conflict of interest and was inconsistent with the West Virginia Rules of Professional Conduct. This Court held that a circuit court has the inherent power to disqualify a lawyer from a case where that lawyer's representation is in violation of rules of professional conduct. *See* 186 W.Va. at 461–462, 413 S.E.2d at 116–117. Finding that continued representation of the plaintiffs by attorney Auvil could be a conflict of interest and that attorney Auvil might be called as a witness, the case was remanded for further factual development. *Id.* at 465, 413 S.E.2d at 120.

sexual relationship with a client may create a prohibited conflict between the interests of the lawyer and those of the client. Fourth, a non-professional, yet emotionally charged, relationship between attorney and client may result in confidences being imparted in circumstances where the attorney-client privilege is not available, yet would have been, absent the personal relationship.

*Id.*

As noted in the ABA opinion, if the lawyer's interests in the relationship with the client interfere with decisions that must be made in the client's behalf, the lawyer's representation of that client will have been impaired and perhaps materially limited. The ABA committee further opined that a sexual relationship between an attorney and client may confuse the line to be drawn in protecting client confidences. This is caused by the fact that only those confidences imparted in the context of the attorney-client relationship are protected by privilege. Confidences imparted in a personal relationship, except for husband and wife, are not protected.

The ABA committee also observed that the attorney-client relationship is a fiduciary one and that a lawyer's fiduciary obligation is heightened if the client is emotionally vulnerable to the extent that the client's ability to make reasoned judgements about the future is affected. This could be of particular concern in a divorce proceeding where emotions run high and the proceedings may present the equivalent of a life crisis for the client. The nature of the representation may also affect the degree of dependence the client feels toward the attorney. Obviously, in a divorce or other adversive domestic relations proceeding, the issues are more emotionally charged. Thus, as the committee observed, the more vulnerable the client, the more imperative it becomes for the lawyer to maintain a normal attorney-client relationship.[5]

The Respondent contends that the same concerns expressed in the ABA opinion are implicated by Rules 1.7(b), 1.8(b), 1.14(a), and 2.1 of the West Virginia Rules of Professional Conduct. Rules 1.7 and 1.8 of the West Virginia Rules of Professional Conduct deal with conflict of interest. Rule 1.7(b) of the West Virginia Rules of Professional Conduct provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation....

W.Va.R.Prof.Conduct 1.7(b). Rule 1.8(b) of the West Virginia Rules of Professional Conduct provides: "(a) lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation...."

Rule 1.14(a) of the West Virginia Rules of Professional Conduct deals with clients under a disability and provides: "When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client." W.Va.R.Prof.Cond. 1.14(a).

In addition, Rule 2.1 of the West Virginia Rules of Professional Conduct provides, in part: "In representing a client, a lawyer shall exercise independent professional judgment and render candid advice." The committee noted emotional detachment is necessary for a lawyer to render the sound, competent and independent advice that is required under the rules of professional responsibility.

The committee concluded, based on model rules which parallel the West Virginia Rules of Professional Conduct discussed above, that:

---

**5.** The comment to Rule 1.14 of the West Virginia Rules of Professional Conduct provides, in part: "The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters."

It is apparent that a sexual relationship during the course of representation can seriously harm the client's interests. Therefore, the Committee concludes that because of the danger of impairment to the lawyer's representation associated with a sexual relationship between lawyer and client, the lawyer would be well advised to refrain from such a relationship. If such a sexual relationship occurs and the impairment is not avoided, the lawyer will have violated ethical obligations to the client.

The client's consent to sexual relations alone will rarely be sufficient to eliminate this danger. In many cases, the client's ability to give meaningful consent is vitiated by the lawyer's potential undue influence and/or emotional vulnerability of the client. . . .

ABA Comm. on Ethics and Prof. Resp., Formal Op. 92–364 (footnote omitted).

It is apparent that the committee found the absence of a specific rule of professional conduct, dealing with attorney/client sexual relations left unresolved many concerns about protecting clients from inadequate and unethical representation in such situations. The concerns expressed by the ABA committee concerning domestic relations cases are also acknowledged in proposed Rule 8.4(g) to the West Virginia Rules of Professional Conduct where it is stated that "a lawyer shall not engage in sexual relations with the client, under any circumstances, if the representation involves a domestic relations action, except adoption."[6]

■ Certainly, however, if counsel's representation presents a conflict of interest or, under the existing rules cited herein, raises other ethical issues to justify disqualification which meet the test of *Garlow*, the trial court, upon adequate record, may disqualify him from further representation.

A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.

186 W.Va. at 458, 413 S.E.2d at 113, Syl.Pt. 1.

## IV.

Finally, the Respondent contends that disqualification of Petitioner's counsel is warranted under Rule 3.7 of the West Virginia Rules of Professional Conduct.[7] The post-divorce proceedings in the case *sub judice* involve interpretation, enforcement, and possible modification of the final divorce decree. The Respondent maintains that these proceedings have given rise to the possibility that counsel may need to be called as a witness for his client. In particular, Respondent contends that counsel misrepresented facts in proceedings involving interpretation and enforcement of the final divorce order and appeared to have some personal knowledge of information that might be relevant to the property settlement issue before the court.

The post-divorce proceedings in this case also involve a pending motion for modifica-

---

6. We note that the proposed rule states that only an aggrieved client has standing to initiate a disciplinary complaint or to assert the rule in any context in any state court. In the case before us, the Petitioner has no complaint about the representation she is receiving and has no apparent desire to relieve counsel from representing her in the post-divorce issues pending before the trial judge. It is the Respondent who contends the conduct is unethical and grounds for disqualification.

7. "Disciplinary Rule 5–102 of the Code of Professional Responsibility and current Rule 3.7 of the Rules of Professional Conduct state that it is unethical for a lawyer representing a client to appear as a witness on behalf of the client except under very limited conditions." Syl.Pt. 1, *Smithson v. United States Fidelity & Guar. Co.*, 186 W.Va. 195, 411 S.E.2d 850.

In *Garlow* we noted that a lawyer should disqualify himself upon finding he will be a material witness, but that the trial court would also have the authority to disqualify under such circumstances. 186 W.Va. at 464, 413 S.E.2d at 119.

tion of visitation rights. On July 19, 1993, the Respondent petitioned the court for modification of visitation, contending the final divorce order does not reflect the terms of the parties' agreement with regard to visitation and argued that he agreed to the entry of the order with the understanding that he and the Petitioner could work together to effect mutually agreeable visitation rights. It is the Respondent's contention that prior to entry of the final divorce decree, he and the Petitioner had worked out a visitation schedule that permitted him to see the parties' children two or three times a week, on weekends and at such other times as the parties agreed. He contends that, relying upon this practice and upon Petitioner's representations that they could work out visitation, he signed the agreement ratified by court order which did not include such liberal visitation.

Respondent contends that after the entry of the final divorce order and after the initiation of Petitioner's relationship with her counsel, Respondent has been refused any visitation other than that set forth in the final order. The Respondent is concerned that counsel has become personally involved with the outcome of Respondent's petition to modify visitation, is attempting to establish a paternal relationship with the parties' children and that counsel has attempted to describe to the court his own beneficial influence on the children while, at the same time, denigrating the Respondent's influence on the same.[8] Thus, the Respondent believes he will need to inquire into the relationship of the Petitioner and her counsel so as to have all relevant facts before the court to determine his visitation and the best interests of the children.

8. For example, the Respondent cites the following assertion by counsel which appears in the Petitioner's motion to dismiss the Respondent's motion to disqualify:

Further, plaintiff has requested plaintiff's counsel to give the minor children proper examples of demeanor, mannerisms, assurances that they are loved and safe even under strenuous circumstances, the bad effects of drinking by any individual, as well as the importance of church attendance.... In addition to the above, plaintiff's counsel's personal involve-

Rule 3.7 of the West Virginia Rules of Professional Conduct provides in part:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client ...

The rationale for Rule 3.7 is explained in the commentary following the section:

Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.

The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

In *Smithson v. United States Fidelity & Guaranty Co.*, 186 W.Va. 195, 411 S.E.2d 850 (1991), this Court recognized there is the potential for abuse where a party moves to disqualify opposing counsel on the basis that he may be called as a potential witness. In syllabus point three of *Smithson*, a rule was developed to strike a balance between the potential for abuse and those instances where the attorney's testimony might be necessary to the opposing party's case:

ment with the children has had a substantial impact on their stability by partially getting the children to understand that material things are not the only things in life, which obviously the defendant has been using to attract the children away from plaintiff.... In fact, this personal relationship has been a very positive factor in the support of the plaintiff and the children. Plaintiff and the children would not be in the position that they are in today had it not been for the proper and professional advice of plaintiff's counsel.

When an attorney is sought to be disqualified from representing his client because an opposing party desires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client.

*Id.* at 197, 411 S.E.2d at 852.[9]

■ Since the circuit court judge gave no reasoning for his conclusion, it should on remand conduct a hearing to determine: 1) whether counsel will be a necessary material witness; and 2) whether under any of the existing Rules of Professional Conduct, counsel has such a conflict as would justify his disqualification. If the lower court determines counsel will be a necessary material witness or should be properly disqualified consistent with the reasoning set forth herein, then counsel may, upon adequate record, be disqualified.

Certified question answered; case remanded.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

**9.** In *State ex rel. Karr v. McCarty,* 187 W.Va. 201, 417 S.E.2d 120 (1992), this Court found that the analysis set forth in *Smithson* addresses the issue of an attorney's testimony on behalf of an opposing party and does not strictly apply where an attorney may be called as a witness for his own client. In *Karr,* we applied the dictates of Rule 3.7 of the West Virginia Rules of Professional Conduct and held that the prosecutor was properly disqualified where an issue regarding the integrity of taped phone conversations was contested and the prosecutor's testimony was necessary for the state to establish chain of custody. *Id.* at 205, 417 S.E.2d at 124.