LOUGHRY, Chief Justice, dissenting:
In a blatant violation of her professional ethics, the respondent lawyer had sexual relations with a client whom she was court-appointed to represent in two cases pertaining to the client's alleged sexual misconduct.[1] In written stipulations and during her sworn testimony before the Hearing Panel Subcommittee ("subcommittee") of the Lawyer Disciplinary Board, the respondent admitted that she violated the multiple Rules of Professional Conduct specified in the Statement of Charges.[2] She even agreed to a sixty-day suspension of her law license. Nonetheless, the subcommittee and the majority of this Court manipulate uncontested facts and ignore key rule provisions to reach the unwarranted conclusion that the respondent did not run afoul of the very rules she conceded violating. Moreover, when choosing to impose a mere-wrist slap of discipline, the majority fails to address several of the rules that the respondent violated. Accordingly, I am compelled to dissent.
I. Improper Dismissal of Four Charges
The Statement of Charges asserted that the respondent violated Rules of Professional Conduct prohibiting sexual relations with clients, conflicts of interest, conduct prejudicial to the administration of justice, and lying to disciplinary counsel.[3] The respondent then stipulated to facts supporting the allegations in the Statement of Charges, and agreed that she violated the specified rules. In the context of a judicial disciplinary proceeding, the Court has recognized the binding nature of stipulations entered into between a respondent and the Office of Disciplinary Counsel:
[I]t is clear that a party who stipulates facts is bound by those stipulations, that the party with the burden of proof is relieved of the duty of producing evidence to prove the facts so stipulated, and that the facts stipulated are considered to have been proven to the requisite standard of proof, whether the burden of proof be by a preponderance of the evidence, by clear and convincing evidence or beyond a reasonable doubt. These purposes seem to be, at a minimum, the reasons for entering into stipulations of facts. There would be very little point in parties entering into and a tribunal accepting stipulations of fact if the party without the burden of proof could claim that the party with the burden of proof failed to meet the burden. The party with the burden of proof would be required to prove that which has already been stipulated, defeating the very purpose of the stipulations.
Matter of Starcher, 202 W.Va. 55, 62-63, 501 S.E.2d 772, 779-80 (1998) ; accord Lawyer Disciplinary Bd. v. Hussell, 234 W.Va. 544, 552, 767 S.E.2d 11, 19 (2014) (Ketchum, J., dissenting) ("A lawyer would not agree with *829 a suspension if he/she hadn't breached the Rules of Professional Conduct.").
Nonetheless, after the Office of Disciplinary Counsel had already presented its case and the evidentiary hearing was concluded, the subcommittee decided to ignore the stipulations and find that disciplinary counsel had failed to prove the very matters that were stipulated. Certainly, the subcommittee could recommend a different disposition than was stipulated by the parties, and as the final arbiter of lawyer disciplinary matters,[4] this Court is always free to reject a recommended disposition. However, there is no justification for totally ignoring stipulations of fact and the respondent's admissions regarding rule violations-particularly without providing the Office of Disciplinary Counsel prior notice that it would need to prove matters that were already stipulated.
Instead of relying upon the respondent's admissions, the subcommittee concluded, and the majority has agreed, that the respondent violated other rules that were not included in the formal charges-thus going out of their way to ensure that the respondent received a light sanction. While I agree that the respondent's conduct in lying to her supervisor constituted a violation of the uncharged rules, that certainly does not justify the dismissal of the other, also-proven claims. Indeed, even without the stipulations, there is more than enough evidence in the record to prove the allegations in the Statement of Charges by the requisite clear and convincing standard. I will address each of the dismissed charges in turn.[5]
A. Rule 8.4(g) /1.8(j) prohibiting sexual relations with a client
The majority dismisses the formal charge that alleges a violation of the Rule of Professional Conduct which is expressly directed at situations like this. Rule 8.4(g), now delineated as Rule 1.8(j), prohibits a lawyer from having "sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client relationship."[6] The record establishes that the respondent personally represented her client Mr. H., she had sexual relations with Mr. H. during the legal representation, and their sexual relationship did not exist at the commencement of their lawyer-client relationship. As such, the majority's analysis should have been compelled to reach the conclusion that Rule 8.4(g) /1.8(j) was violated.
Instead, in an effort to avoid Rule 8.4(g) /1.8(j)'s unambiguous proscription against sexual relations with clients, the subcommittee and the majority try to retrofit the respondent's actions within the rule's exception for existing relationships. This effort fails. The plain language of the exception only allows a lawyer to have a sexual relationship with a client if the sexual aspect "existed between them at the commencement of the lawyer/client relationship." Id. (emphasis added). Both the respondent and Mr. H. testified under oath that they were not engaged in a sexual relationship when the respondent was court-appointed to represent Mr. H. in April 2014. Instead, the respondent testified about having a prior, intermittent sexual relationship with Mr. H. that had "dissipated" by December 2013, a time when they were each dating other people. The respondent admitted there was no sexual *830 conduct between them until late September or October 2014, which was while she was already engaged in the ongoing legal representation of Mr. H.
In an analysis that would be more suited for the readers of a romance novel, the subcommittee theorized about what the respondent's and Mr. H.'s feelings were, or might have been, about their prior, intermittent relationship. Reasoning that "relationships do not stop and start with mathematical precision," the subcommittee found that this was an ongoing sexual relationship. Blindly following the subcommittee's lead, the majority somehow concludes that the respondent is exempt from the prohibition in Rule 8.4(g) / 1.8(j). However, the uncontested facts and unambiguous rule language should not be disregarded based upon the subcommittee's romantic musings.
Rule 8.4(g) /1.8(j) is plainly-worded and free from ambiguity. As such, it is not subject to interpretation or construction. See, e.g., Syl. Pt. 1, Crockett v. Andrews, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."). By permitting this prior sexual relationship-a relationship that the respondent and her client both admitted was not in existence "at the commencement" of the legal representation-the majority has erroneously construed the rule to include an additional, unwritten exception. Our law is clear that "[a] statute, or administrative rule, may not, under the guise of 'interpretation,' by modified, revised, amended or rewritten." Syl. Pt. 1, Consumer Advocate Div. v. Public Service Comm'n, 182 W.Va. 152, 386 S.E.2d 650 (1989). Because the facts show, by the requisite clear and convincing standard, that no "sexual relationship existed between" the respondent and her client, Mr. H., "at the commencement of the lawyer/client relationship[,]" the exception in Rule 8.4(g) /1.8(j) simply does not apply.
By quoting a passage in the subcommittee's report, the majority adopts the subcommittee's finding of fact that the respondent "honestly and understandably believed that her conduct was exempted by the Rule" because of her past sexual history with Mr. H. This finding is belied by the record evidence. Before she had intimate relations with her client, the respondent had Mr. H. meet with Chief Public Defender Stanton in September 2014 to ask that another lawyer take over his legal representation. If the respondent had really believed that her conduct would be exempt from Rule 8.4(g) /1.8(j), she would have had no reason to advise Mr. H. of the need to seek different counsel. Moreover, after learning during the September 2014 meeting that Mr. H. desired to "date" the respondent, the Chief Public Defender separately instructed each of them to wait until after the attorney-client representation was over. The respondent flatly ignored this directive and secretly began having sex with her client. For all of these reasons, it is clear error for the majority to dismiss this formal charge.
B. Rule 1.7 conflict of interest
In addition to alleging a violation of Rule 8.4(g) /1.8(j), the Investigative Panel of the Lawyer Disciplinary Board separately charged the respondent with a violation of Rule 1.7 pertaining to a conflict of interest arising from her own interests. Rule 1.7(b), as worded when the respondent became Mr. H.'s lawyer in April 2014, directed that "[a] lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer's own interests" unless the lawyer "reasonably believes the representation will not be adversely affected" and "the client consents after consultation."[7]
*831 This rule is deeply rooted in the duty of loyalty that a lawyer owes to her client. See, e.g., Lawyer Disciplinary Bd. v. Artimez, 208 W.Va. 288, 299, 540 S.E.2d 156, 167 (2000) ( " 'Loyalty is an essential element in the lawyer's relationship to a client.' W.Va. Rules of Professional Conduct 1.7 cmt. Loyalty to a Client."). The Hearing Panel Subcommittee has recommended that the Court dismiss this charge, and, as the final arbiter of legal disciplinary matters, the Court is responsible for deciding whether to accept the subcommittee's recommendations.[8] Nonetheless, the majority's opinion is virtually silent regarding the Rule 1.7 charge.
Importantly, even if it is assumed, for purposes of argument, that the respondent's sexual relationship with Mr. H. fell within the "existing relationship" exception to Rule 8.4(g) /1.8(j), that would not preclude a finding that the respondent violated Rule 1.7. This is demonstrated by the case of Musick v. Musick, 192 W.Va. 527, 453 S.E.2d 361 (1994), where the Court was called upon to answer a certified question arising from post-divorce proceedings. In Musick, a party moved to disqualify opposing counsel because counsel had commenced a sexual relationship with the lawyer's client, who was the moving party's former spouse. Id. at 529, 453 S.E.2d at 363. Rule 8.4(g) was newly promulgated when Musick was decided, and had not been in effect when the lawyer engaged in sexual relations with his client. Id. In a well-reasoned opinion authored by Justice Workman, the Court acknowledged that even without Rule 8.4(g), "other rules of professional conduct may be violated by a lawyer's sexual relationship with his [or her] client." Id. at 528, 453 S.E.2d at 362, syl. pt. 1, in part (emphasis added).[9] These other rules include Rule 1.7, the conflict of interest rule; Rule 1.8(b), which prohibits a lawyer from using information relating to the representation of a client to the client's disadvantage; Rule 2.1, which requires a lawyer to use independent professional judgment and render candid advice; and Rule 3.7, the rule prohibiting a lawyer from being both the advocate and a witness in the same matter. Id. at 530-33, 453 S.E.2d at 364-67. The Court remanded the case to the circuit court to hold an evidentiary hearing and consider whether the lawyer should be disqualified based upon a violation of one or more of the other rules. Id. at 534, 453 S.E.2d at 368.
In Musick, the Court discussed the American Bar Association's Formal Opinion 92-364 (1992), which recognized some of the myriad problems inherent when a lawyer commences a sexual relationship with a current client. For example, the ABA noted that "a sexual relationship with a client may affect the independence of the lawyer's judgment." Musick at 530, 453 S.E.2d at 364 (quoting ABA Formal Op. 93-364). In addition, "a non-professional, yet emotionally charged, relationship between attorney and client may result in confidences being imparted in circumstances where the attorney-client privilege is not available, yet would have been, absent the personal relationship." Id. at 531, 453 S.E.2d at 365 (citation omitted). Furthermore, "a sexual relationship between an attorney and client may confuse the line to be drawn in protecting client confidences." Id. Certainly these and other concerns were present during the respondent's dual roles as lawyer and intimate partner to Mr. H. What if she learned information during their personal relationship that impacted the cases or made her a witness? What if they had a personal quarrel? Because the respondent was court-appointed to represent Mr. H. in his two cases, Mr. H. could not simply fire the respondent if they had a disagreement or he became concerned about the conflict of interest. Rather, he would have been required to file a motion with the circuit court specifying grounds for her removal. Moreover, how could the respondent balance her own interests in maintaining a personal and professional reputation, with the fact that she was *832 intimately involved with a man charged with sexual abuse of his children?
This last point is critical inasmuch as the respondent admitted, under oath, that she eventually ended her intimate relationship with Mr. H. because of the ramifications his criminal conviction would have upon her, personally. Shortly after the ethics complaint was filed and the respondent withdrew as his counsel, Mr. H., acting upon the advice of a new lawyer, accepted a plea bargain and pled guilty to a lesser-included offense. This conviction necessitated his registration as a sex offender. The respondent testified that as a new lawyer "building a career and a reputation[,]" she broke up with Mr. H. after he was convicted because it "would be in the best interest of myself and my career not to have a relationship with him after he's required to registered as a sexual offender."[10] This admission proves she had a conflict of interest. The respondent was representing Mr. H. in felony criminal charges for which he faced incarceration for thirty to seventy years. How could she expect to provide unbiased advice to her client about that case and any possible plea offers, if she was concerned with the impact that the advice might have upon herself?
Despite her admission during the evidentiary hearing that she had an "impermissible" conflict of interest,[11] the respondent argues that Mr. H. verbally waived any conflict of interest arising from their sexual relationship. She notes that although the current version of Rule 1.7 requires that waivers be obtained in writing,[12] the rule in effect at the time she was appointed to Mr. H.'s cases did not require written waivers.[13] However, regardless of which version of Rule 1.7 applies, the key consideration is that the respondent should not have sought any waiver in this situation. Both versions of Rule 1.7 provide for conditions when a waiver may be obtained, thus indicating that not all conflicts of interest are waivable. Pursuant to the prior language of the rule, the lawyer must "reasonably believe[ ] the representation will not be adversely affected" before allowing the client to waive the conflict.[14] Under the current rule's language, a lawyer must, inter alia, "reasonably believe[ ] that the lawyer will be able to provide competent and diligent representation [.]"[15] Under the facts of this case, no reasonable lawyer could have thought that the representation would not be impacted by the respondent's own concerns for her career and reputation. Importantly, even the respondent herself did not believe she could continue to act as Mr. H.'s lawyer if they resumed a sexual relationship. This is evidenced by the fact that before she and Mr. H. initiated their new sexual relationship in late September or October 2014, she first had Mr. H. meet with Chief Public Defender Stanton in an effort to have another lawyer take over the representation. Under these *833 facts, the majority's dismissal of the conflict of interest claim is bewildering.
C. Rule 8.4(d) prejudice to the administration of justice
Although not discussed by the majority, the respondent also violated Rule 8.4(d) as alleged in the Statement of Charges. This rule provides that "[i]t is professional misconduct for a lawyer to: ... engage in conduct that is prejudicial to the administration of justice[.]" Mr. H. was a client facing child abuse and neglect charges and related criminal sexual abuse charges. He met the financial requirements for the appointment of counsel, and the respondent was appointed by the circuit court to oversee his legal interests. Because the respondent was his court-appointed assistant public defender, Mr. H. could not simply terminate the representation and select another lawyer if their personal relationship soured or he changed his mind about the conflict of interest that their intimate relationship posed.
The respondent obviously understood that pursuing a sexual relationship with Mr. H. would be a violation of the governing Rules of Professional Conduct. Before engaging in sexual relations, she caused Mr. H. to approach her supervisor, Chief Public Defender Stanton, about taking over the case. Ms. Stanton, although not told the complete truth by Mr. H., separately advised both Mr. H. and the respondent that they must not begin a personal relationship until after the representation was over. Critically, the respondent ignored this directive and secretly reignited a prohibited relationship with her client. Later, when Ms. Stanton heard about the improper relationship, the respondent flatly lied to cover it up-which, in turn, led to Ms. Stanton's provision of false information to both her governing board and the local circuit court judge. This leaves little doubt that the respondent's actions were contrary to the administration of justice.
D. Rule 8.1(a) false statement to disciplinary counsel
By accepting the subcommittee's recommendations, the majority also erroneously dismisses the portion of the Statement of Charges contending that the respondent violated Rule 8.1(a) : "[A] lawyer ... in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact[.]" When giving a sworn statement to the Office of Disciplinary Counsel on April 22, 2016, the respondent represented that Chief Public Defender Stanton saw no conflict of interest for the respondent to serve as Mr. H.'s lawyer. This is misleading, if not outright false. Ms. Stanton has testified that she was not aware of the sexual relationship and, if she had been told, she would have immediately recognized its problematic nature. As the respondent's direct supervisor, Ms. Stanton was responsible for making reasonable efforts to ensure the respondent complied with the Rules of Professional Conduct. See R. Prof. Conduct 5.1(b).
The subcommittee brushed this issue aside based upon Mr. H.'s dishonesty with the respondent regarding the discussion he had with Ms. Stanton in September 2014. Mr. H. told the respondent that he had revealed their previous sexual relationship to Ms. Stanton-when, in actuality, he had not revealed this fact during the meeting. However, the subcommittee's reasoning completely misses the point. It is irrelevant whether Ms. Stanton knew about the prior, intermittent sexual relationship. The important fact is that when providing the sworn statement to disciplinary counsel, the respondent certainly knew that Ms. Stanton did not condone an assistant public defender engaging in sexual relations with a client-yet the respondent suggested otherwise. The respondent knew that Ms. Stanton had expressly told her not to begin dating Mr. H., and knew that Ms. Stanton had reacted angrily when first told of the intimate relationship. Moreover, the night before giving her sworn statement, the respondent and Ms. Stanton had a telephone conversation during which they discussed this disciplinary case and the sexual nature of the respondent's relationship with her client. By testifying that her supervisor saw no conflict of interest, the respondent made a clear misrepresentation of material fact to disciplinary counsel in violation of Rule 8.1(a). The majority weakens our professional code of conduct by trivializing this type of deception.
II. Insufficient Sanction
Despite the clear and convincing evidence that the respondent violated multiple, serious *834 Rules of Professional Conduct by engaging in a sexual relationship with a client, having an unwaivable conflict of interest, engaging in conduct prejudicial to the administration of justice, and lying to both disciplinary counsel and Ms. Stanton, the majority chooses to impose a mere admonishment and costs. I recognize that certain factors mitigate the sanction in this case, primarily the respondent's youth and inexperience in the practice of law. Even so, an admonishment is insufficient for this conduct.
When choosing a sanction, the majority limits its analysis to only the uncharged rule violations-namely, the conclusion that the respondent violated Rules of Professional Conduct 4.1 and 8.4(c) by lying to her supervisor, Ms. Stanton. Rule 4.1 prohibits a lawyer from, inter alia, "knowingly ... mak[ing] a false statement of material fact or law to a third person[,]" while Rule 8.4(c) prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" I agree that these two Rules were compromised by the respondent's misconduct. However, even limiting the analysis to these acts of dishonesty, the majority should have imposed a sanction harsher than an admonishment. The respondent did not just lie to her boss, she stood by while Ms. Stanton relayed the false information to their governing board of directors and to the circuit court. Just a few weeks ago, when deciding a different lawyer disciplinary matter, the Court wrote that "[n]o single transgression reflects more negatively on the legal profession than a lie" and "[r]espect for our profession is diminished with every deceitful act of a lawyer." See Lawyer Disciplinary Bd. v. Munoz, No. 16-0645, 240 W.Va. 42, ----, 807 S.E.2d 290, 299, 2017 WL 5346446 at *9 (2017), at slip op. at 18 (internal citations and quotation marks omitted). In Munoz, a majority of the Court imposed a three month suspension upon a lawyer who lied to disciplinary counsel about his representation of clients in two habeas corpus cases, and lied to several judicial officers regarding his own contribution to delay in a criminal proceeding. Id.[16]
A suspension from the practice of law is an appropriate sanction for a lawyer's sexual misconduct with a client. For example, in Lawyer Disciplinary Board v. Hewitt, No. 35515 (W.Va. Apr. 14, 2011) (unreported order), a lawyer began a sexual relationship with a client and was convicted of misdemeanor trespassing upon the property of her paramour's ex-spouse. This Court, inter alia, suspended the lawyer from the practice of law for three months. Id.
The respondent's conduct in this matter was intentional, dishonest, risked harm to her client because she valued her own personal concerns over those of Mr. H., and subjected the practice of law to extreme disrepute. The practice of law is not a dating service; lawyers are expected to maintain their professionalism at all times. In my opinion, for her multiple violations of the Rules of Professional Conduct, the respondent should receive at least the sanction to which she stipulated: a sixty-day suspension from the practice of law, six months of supervised practice, and payment of costs.
For the reasons stated herein, I respectfully dissent. I am authorized to state that Justice Workman joins in this dissent.

In a civil abuse and neglect case and the related felony criminal charges, the DHHR and the State of West Virginia accused the respondent's client, Mr. H., of molesting his two minor daughters. The respondent was court-appointed to represent Mr. H. through her employment as an assistant public defender.

For example, during the subcommittee's evidentiary hearing, disciplinary counsel asked the respondent, "[a]re you prepared to admit and acknowledge that you had sexual relations with your court-appointed client that created an impermissible conflict between you and your client in violation of 1.7(a)(2)" of the Rules of Professional Conduct? The respondent answered, "[y]es."

These rules are discussed in detail in sections I-A through I-D of this dissent.

See, e.g., syl. pt. 3, Comm. on Legal Ethics v. Blair, 174 W.Va. 494, 327 S.E.2d 671 (1984) ("This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.").

The majority opinion misstates the Office of Disciplinary Counsel's position by saying that the "ODC filed an objection on the grounds that the sanctions were not sufficiently harsh." In addition to objecting to the subcommittee's recommended sanction, the ODC also contends, quite properly, that the respondent is guilty of the rule violations specified in the Statement of Charges.

When the respondent began having sexual relations with her client, this rule was codified at Rule 8.4(g) of the Rules of Professional Conduct. Effective January 1, 2015, minor stylistic changes were made to the rule's language and it was moved to Rule 1.8(j). The minor changes to the rule have no impact on this case. Because the respondent's prohibited intimacy with her client began in October 2014 and extended well into 2015, she violated both the prior 8.4(g) and the current 1.8(j).

Effective January 1, 2015, which was while the respondent's representation of Mr. H. was ongoing, the Court made modifications to Rule 1.7 that do not affect this case. The current Rule 1.7 provides, in relevant part: "(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: ... (2) there is a significant risk that the representation of one or more clients will be materially limited ... by a personal interest of the lawyer." Subsection (b) allows for a written waiver of the conflict in certain circumstances-but to even seek a waiver, the lawyer must, inter alia, "reasonably believe [ ] that the lawyer will be able to provide competent and diligent representation" and the representation must not be "prohibited by law [.]" Id. at (b)(1), (2).

See supra, note 4.

C.f. Artimez, 208 W.Va. at 291, 540 S.E.2d at 159, syl. pt. 6 (recognizing that even though no existing Rule of Professional Conduct specifically prohibits sexual relationship between lawyer and his/her client's spouse, lawyer's conduct in this regard may violate other Rules of Professional Conduct).

In a sworn statement taken by the Office of Disciplinary Counsel, the respondent testified as follows.
Q. Okay. Did you continue to-after Mr. Kirkpatrick became his [Mr. H.'s] attorney, did you continue your sexual relationship with Mr. H[.] then?
A. Yes, I did, until Mr. H[.] accepted the plea. After the acceptance of the plea, it had dissipated.
Q. Okay. Was that your choice?
A. My suggestion, mutual choice.
Q. Okay. Was there a reason why you decided at that point that the relationship was ending?
A. I am very new to the practice of law. I'm still at this time building a career and a reputation. I started practicing law October of 2013, so less than three years. I believe that having a relationship with Mr. H[.] would not be beneficial for me while trying to build the career that I'm in. That whenever one is an attorney, that the attorney really must command some type of authority in the courtroom with jurors[,] with their clients[,] and with opposing counsel, and with Summersville and Nicholas County being as small as it is, if a relationship had continued with Mr. H[.], of course, perspective [sic] jurors and perspective [sic] clients, should I ever decide to go into private practice, would be aware that this attorney is in a relationship with a registered sex offender. So I think that it would be in the best interest of myself and my career not to have a relationship with him after he's required to register as a sex offender.

See supra, note 2.

See Rule of Prof. Cond. 1.7(b)(4) (2015).

See Rule of Prof. Cond. 1.7(a)(2) (1989).

See supra, note 13.

See supra, note 12.

I dissented in Munoz based upon my belief that a harsher sanction was in order for that lawyer's dishonest conduct.