413 S.E.2d 112

Charles G. **GARLOW**, Petitioner,

v.

Honorable Paul **ZAKAIB**, Jr., Judge of the Circuit Court of Kanawha County, Respondent.

David L. **GRUBB**, Petitioner,

v.

Honorable Paul **ZAKAIB**, Jr., Judge of the Circuit Court of Kanawha County, Respondent.

Nos. 20204, 20205.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1991.

Decided Dec. 17, 1991.

Elizabeth A. Pyles, Pyles & Auvil, Parkersburg, for the petitioners.

No appearance for respondent.

Kenneth E. Knopf, Cleek, Pullin & Bibb, Charleston, for Charles G. Brown, real party in interest in No. 20204.

David P. Cleek, Cleek, Pullin & Bibb, Charleston, for Charles G. Brown, real party in interest in No. 20205.

McHUGH, Justice:

These original proceedings are before the Court upon the petitions of Charles G. Garlow and David L. Grubb. The respondent in both cases is the Honorable Paul Zakaib, Judge of the Circuit Court of Kanawha County. The petitioners seek a writ of prohibition restraining enforcement of the November 19, 1990 orders of the circuit court.

## I.

Civil proceedings were instituted by the petitioners against Charles G. Brown, former attorney general, in the circuit court.[1] On August 22, 1990, Brown filed a motion to disqualify the law firm of Pyles & Auvil, and individual attorneys Elizabeth Pyles and Walt Auvil, from representing the petitioners in the underlying action because Auvil had been employed in the Office of Attorney General during the time Brown served as attorney general.

Factual stipulations before *this Court* indicate that in these cases, Elizabeth Pyles, as a sole practitioner, filed the un-

derlying actions prior to forming a partnership with Walt Auvil.[2]

The underlying actions are primarily based upon allegations of retaliatory discharge of the petitioners by the defendant Brown. It is alleged by the defendant Brown that the petitioner Garlow was dismissed for failure to file an appeal in a timely fashion, and that the petitioner Grubb was dismissed for a number of reasons, primarily, though, for inherent conflicts with respect to Grubb's involvement with an organization that filed a lawsuit against the State of West Virginia.

The petitioners, on the other hand, claim that Grubb was dismissed for raising questions with respect to Brown allegedly soliciting political campaign contributions illegally.[3] Furthermore, the petitioners claim that Garlow was dismissed for his close association with Grubb and the controversy surrounding Grubb's dismissal.

It is also alleged by Brown, that Auvil, who worked in the Anti–Trust Division of the Attorney General's Office, worked closely with the Consumer Protection Division on various cases. Both petitioners worked in the Consumer Protection Division. Brown further alleges that the physical proximity of Auvil's office to the petitioners' offices was close. Therefore, Brown maintains that Auvil is intimately acquainted with issues related directly to the underlying actions, specifically, the petitioners' ability to carry out the duties of their employment.

The defendant Brown also contends that Auvil is a potential witness concerning the events leading to the petitioners' dismissals. It is stipulated that Auvil has already testified before the grand jury which indict-

---

1. The petitioners were employed in the Office of the Attorney General.

2. We note some lack of diligence demonstrated by counsel for the parties in pursuit of this matter before this Court. At the time these cases were granted for review by this Court, we entered an order directing "that a factual record be developed by deposition or stipulation regarding the basis for the disqualification of the attorney involved [in] the underlying proceeding[s] ... [to] be filed in this Court *on or before*

*the 16th day of August, 1991.*" (emphasis supplied) However, this case was submitted on September 10, 1991, and no such additions to the record were filed in this Court until the late afternoon of September 9, 1991, the day before submission. The record before this Court remains inadequate to resolve this matter.

3. It is stipulated that following a trial on Brown's alleged illegal campaign practices, a verdict of "not guilty" was returned.

ed Brown for the alleged illegal campaign practices.

On November 19, 1990, the circuit court granted the defendant Brown's motion, *nunc pro tunc* August 22, 1990. In granting the defendant's motion, the circuit court found that "continued representation of plaintiff[s] by either Walt Auvil or his law partner, Elizabeth Pyles, would create an appearance of impropriety, the likelihood of a potential conflict of interest in the future, and is otherwise inconsistent with the West Virginia Rules of Professional Conduct."

Accordingly, the circuit court disqualified the attorneys in their individual capacities, as well as their firm, from further representation of the petitioners. It is enforcement of this order which the petitioners seek to prohibit.

The petitioners allege that Rule 1.8 of the *Rules of Professional Conduct*, discussed *infra*, is the only authority contained therein under which a court may order the withdrawal of counsel from a particular case based upon a claim of conflict of interest. Moreover, the petitioners contend that the circuit court's ruling fails to establish that an existing conflict is present, or what potential conflict might arise. The circuit court's ruling, the petitioners maintain, appears to be predicated upon the mere *possibility* of conflict which might exist in the future.[4]

Although the petitioners allege that Rule 1.8 is the "only" authority by which a court can order withdrawal of counsel, it is apparent that other provisions of the *Rules of Professional Conduct* may be implicated in this case.

## II.

Before we address the specific Rules which may be implicated in this case, we first address an issue raised by Charles Brown, the defendant in the underlying action. Specifically, that issue is whether a circuit court judge has the authority to disqualify a lawyer from a case because that lawyer's representation may be in violation of the *Rules of Professional Conduct*.[5]

■ This Court has not directly addressed this issue. In *Carey v. Dostert*, 170 W.Va. 334, 294 S.E.2d 137 (1982), we held that a circuit court judge has neither statutory nor common-law authority to suspend or annul a lawyer's license to practice law. In *Carey*, we relied upon syllabus point 1 of *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982), which states: "The exclusive authority to define, regulate and control the *practice of law* in West Virginia is vested in the Supreme Court of Appeals." (emphasis supplied)

However, the cases now before us do not involve the *practice* of law in general, nor do they involve disciplinary proceedings. Rather, they deal with the possibility of a violation of the *Rules of Professional Conduct* due to representation by a lawyer or the lawyer's firm.

In *United States v. Clarkson*, 567 F.2d 270 (4th Cir.1977), the United States Court of Appeals for the Fourth Circuit set forth a test for determining whether disqualification by the trial court is proper where a potential conflict of interest exists.

In determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of

---

**4.** The petitioners also assert that the law firm of Pyles & Auvil has volunteered to take whatever steps deemed appropriate to assure that no *actual* conflict will arise.

**5.** The defendant Brown also contends that prohibition does not lie in this case because it was the *petitioners* who brought a potential conflict to the attention of the circuit court by their "motion to determine application of the Rules of Professional Conduct." Therefore, the defendant Brown asserts that because the petitioners received an unfavorable ruling, an appeal, and not a writ of prohibition, is proper. However, the circuit court's orders in these cases are actually based upon the *defendant* Brown's motion to disqualify the law firm of Pyles & Auvil. Accordingly, prohibition in this type of case may be proper under appropriate facts.

impropriety,' it is to resolve all doubts in favor of disqualification. *Id.* at 273 n. 3. *Accord, Stitz v. Bethlehem Steel Corp.*, 650 F.Supp. 914, 916 (D.Md. 1987).

Although, as pointed out, it is *this* Court, and not the trial court, that has the authority to define, regulate, and control the practice of law, the trial court " 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.' " Syl. pt. 3, in part, *Shields v. Romine*, 122 W. Va. 639, 13 S.E.2d 16 (1940) (internal citation omitted). *Accord*, syl. pt. 2, *F.S. & P. Coal Co. v. Inter–Mountain Coals, Inc.*, 179 W.Va. 190, 366 S.E.2d 638 (1988).

*W.Va.R.Prof.Cond.* 1.7 sets forth the general rules pertaining to conflicts of interest. The Comment to this Rule, in part, suggests that it is appropriate for a trial court to at least raise the question of a possible conflict.[6]

> Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a *court* may raise the question when there is reason to infer that the lawyer has neglected the responsibility.... Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.

(emphasis supplied)

The concern of misusing the disqualification as a technique of harassment has been effectively reiterated by one federal court:

> [D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a

party of representation of their own choosing.... [Such] motions should be viewed with extreme caution for they can be misused as techniques of harassment.

*Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir.1982).

It has been pointed out that "most courts hold that it is consistent with the inherent powers doctrine for *trial* and intermediate appellate courts to disqualify a lawyer because of a serious conflict of interest." C. Wolfram, *Modern Legal Ethics* § 2.2.4, at 32 (1986) (emphasis supplied).

For example, in *Pantori, Inc. v. Stephenson*, 384 So.2d 1357 (Fla.Dist.Ct.App. 1980), the Florida District Court of Appeal reached the conclusion that a trial court has the authority to disqualify a lawyer from a case by focusing on the basic purpose of the trial court. That court reasoned thusly:

> The basic purpose of the trial court is to afford litigants an impartial forum in which their complaints and defenses may be presented, heard and decided with fairness. This purpose transcends the right of attorneys to be controlled by the [state] supreme court. It is unquestioned that a trial court may control an attorney for contemptuous conduct. It may deny an attorney leave to withdraw from a case. Therefore, a trial court may decide, after consideration of a motion alleging sufficient facts, which, if true, would warrant removal of opposing counsel, that removal is mandated.

*Id.* at 1359 (citations omitted).

We agree with this analysis as well as the consideration set forth in the Comment to Rule 1.7 with respect to a conflict calling into question the fair and efficient administration of justice. As stated previously, a trial court has inherent power to do what is reasonably necessary for the administration of justice.

Therefore, we hold that a circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary

---

**6.** The "Scope" of the *Rules of Professional Conduct* expounds that "[t]he Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule.... The Com-

ments are intended as guides to interpretation, but the text of each Rule is authoritative." Therefore, reference to the Comments is for illustrative purposes.

for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.

### III.

We now turn to the specific Rules which may be implicated in this case.

### A. *Conflict of Interest*

*W.Va.R.Prof.Cond.* 1.7, 1.8, and 1.9 pertain to "conflict of interest." As previously stated, Rule 1.7 sets forth the general rules concerning conflicts.

Specifically, Rule 1.7 provides, in part:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.[7]

The Comment to Rule 1.7 states, in part, that relevant factors in determining adverse effect as a result of conflict of interest include: duration and intimacy of the lawyer's relationship with the clients involved; functions performed by the lawyer; likelihood of actual conflict; and likelihood of prejudice. The Comment goes on to state that it is often a question of "proximity and degree." These factors are all relevant in determining whether a conflict exists under this Rule.

7. The full text of Rule 1.7 is as follows:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities

Rule 1.8 sets forth "prohibited transactions." This Rule lists eleven areas of involvement in which a lawyer should not be involved, or, if involved, the proper precautionary steps that should be taken in order to eliminate or minimize the conflict. Areas involved by this Rule include, *inter alia:* business transactions with the client; use of disadvantageous information; aggregate settlements; opposing representation by family members; and contingent witness fees.

Rule 1.8(b) states: "A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation[.]" However, this section obviously addresses the situation of a lawyer prejudicing his or her *own* client with the use of improper information. Other than this provision, there is nothing else under Rule 1.8 that speaks to the lawyer's use of information that would pertain to this case. Therefore, this "conflict of interest" Rule does not appear to be implicated in these cases.

Rule 1.9 addresses the situation of a lawyer representing a client where it would be materially adverse to a former client, including the use of information that would disadvantage the former client. Specifically, Rule 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interest[s] are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the

to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

The Comment to Rule 1.9 provides that "[t]he scope of a 'matter' for purposes of paragraph (a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in the matter can also be a question of degree." These factors are important in determining applicability of Rule 1.9, but the ultimate test is referred to later in the Comment thereto, as follows: "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question."

The stipulations and affidavits which were finally filed in this Court, however, are not adequate to determine the precise degree of Auvil's relationship to the pertinent events which would give rise to a conflict. Therefore, they are of limited value. In fact, even the circuit court in this case did not have before it adequate evidence to make such a determination. Rather, the circuit court merely had before it the motions to disqualify, along with memoranda supporting these motions.

### B. *Imputed Disqualification*

These cases may also involve *W. Va. R.Prof.Cond.* 1.10. Subsections (a) and (b) of that Rule provide:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information pro-

tected by Rules 1.6 and 1.9(b) that is material to the matter.[8]

With respect to imputed disqualification, it has been observed that "[t]he formal rank of the particular lawyer who is the connecting link between the lawyers or firms is by itself not critical." C. Wolfram, *Modern Legal Ethics* § 7.6.3, at 396 (1986).

One court has concluded that

before a client's former attorney will be disqualified from representing a party whose interests are adverse to the former client's, the former client must show that the matters embraced in the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.

*Sears, Roebuck & Co. v. Stansbury*, 374 So.2d 1051, 1053 (Fla.Dist.Ct.App.1979). This conclusion is sound and it is consistent with decisions of other courts as well. *See, e.g., Akerly v. Red Barn System, Inc.*, 551 F.2d 539, 543–44 (3d Cir.1977); *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 89 (5th Cir.1976); *In re Airport Car Rental Antitrust Litigation*, 470 F.Supp. 495, 499 n. 3 (N.D.Cal.1979).

In these cases, several factual questions are raised, such as: the nature of any information acquired by Auvil; whether any information acquired by Auvil would give rise to a conflict; whether Brown, as Attorney General, was Auvil's "client"; and the extent of Auvil's relationship with Brown.

However, a better developed factual record is necessary before it may be determined whether disqualification of Auvil's firm is proper.

### C. *Lawyer as Witness*

Finally, Rule 3.7 may be implicated in these cases. That Rule provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

---

**8.** Rules 1.7 and 1.8 pertain to conflict of interest. Rule 2.2 pertains to the lawyer acting as intermediary between clients. Rules 1.6 and 1.9(b) pertain to the few instances when a lawyer may or should disclose certain information relating to representation of a client.

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

■ Recently, we pointed out that "Rule 3.7 of the Rules of Professional Conduct state[s] that it is unethical for a lawyer representing a client to appear as a witness on behalf of the client except under very limited conditions." Syl. pt. 1, in part, *Smithson v. United States Fidelity & Guaranty Co.*, 186 W.Va. 195, 411 S.E.2d 850 (1991).

Obviously, Rule 3.7 looks to whether a "lawyer is *likely* to be a necessary witness[.]" (emphasis supplied) Under subsection (b) of Rule 3.7, it is possible that Auvil could be a witness while his partner, Pyles, acts as advocate for the petitioners. However, Rules 1.7 and 1.9 would again be implicated, and the effect of those provisions would have a bearing on whether this exception would be permitted.

As stated previously, the defendant Brown asserts that Auvil is a potential witness concerning the events leading to the petitioners' dismissals. Moreover, as pointed out, Auvil has already testified before the grand jury which indicted Brown.

■ Of course, the lawyer should disqualify himself or herself upon finding that he or she will be a material witness. " 'When counsel for a party to a cause finds that he is required to be a material witness for his client he should immediately so advise his client and retire as counsel in the case.' Syllabus Point 8, *Edmiston v. Wilson*, 146 W.Va. 511, 120 S.E.2d 491 (1961)." Syl. pt. 2, *Smithson v. United States Fidelity & Guaranty Co.*, 186 W.Va. 195, 411 S.E.2d 850 (1991). However, the court would also have the authori-

ty to disqualify under such circumstances. *See* syl. pt. 1 herein.

A leading case with respect to the prohibition of a lawyer being an advocate in a case where he or she is likely to be a necessary witness is *Comden v. Superior Court*, 20 Cal.3d 906, 145 Cal.Rptr. 9, 576 P.2d 971, *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978). In *Comden*, the Supreme Court of California held that the trial court should

first consider whether the attorney's testimony will be necessary to protect his client's interests and, if it concludes such testimony will likely be necessary, that it order a timely withdrawal consistent with minimizing prejudices which may result from the substitution of counsel. Whether an attorney ought to testify ordinarily is a discretionary determination based on the court's considered evaluation of all pertinent factors including, inter alia, the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established.

145 Cal.Rptr. at 11, 576 P.2d at 974.

■ This Court recently set forth a three-part test for determining whether disqualification is proper where a lawyer may be called as a witness:

When an attorney is sought to be disqualified from representing his client because an opposing party desires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client.

Syl. pt. 3, *Smithson v. United States Fidelity & Guaranty Co.*, 186 W.Va. 195, 411 S.E.2d 850 (1991).

We believe that this inquiry should be employed by the circuit court in these cases, as it reflects the spirit of Rule 3.7.[9]

## IV.

As stated throughout this opinion, there are many inadequacies in the records in these cases. Although there are some stipulations and affidavits filed before *this Court*, the extent of Auvil's relationship with the petitioners and Brown, which would give rise to disqualification, cannot be gleaned from the evidence submitted. In any event, the circuit court did not have before it these stipulations, nor, as far as this Court can determine, any testimony which would have been necessary in deciding the disqualification issue. Furthermore, there is nothing in the record to indicate the precise testimony of Auvil before the grand jury. This testimony would be pertinent to the circuit court's decision.

Accordingly, we hold that before a circuit court disqualifies a lawyer in a case because the lawyer's representation may conflict with the *Rules of Professional Conduct*, a record must be made so that the circuit court may determine whether disqualification is proper. Furthermore, this Court will not review a circuit court's order disqualifying a lawyer unless the circuit court's order is based upon an adequately developed record. In the alternative, if the circuit court's order disqualifying a lawyer is based upon an inadequately developed record, this Court, under appropriate circumstances, may remand a case to the circuit court for development of an adequate record.

Consequently, we deny the writ of prohibition for lack of an adequate record. However, our denial is without prejudice to the petitioners from renewing their objection to the circuit court's order so that the circuit court may again consider the question of disqualification, and the appropriate

record be developed, in light of the principles set forth in this opinion.

Writ denied.

9. Rule 1.11 pertains to "successive government and private employment." This Rule does not appear to apply to the cases at hand, however, because its rationale is more concerned with preventing a lawyer from exploiting lucrative opportunities which, but for governmental service, would not have been obtained. *See* C. Wolfram, *Modern Legal Ethics* § 8.10.1 (1986).