IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**June 7, 2013**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

No. 13-0009

STATE OF WEST VIRGINIA EX REL. MICHAEL T. CLIFFORD,
Petitioner

v.

WEST VIRGINIA OFFICE OF DISCIPLINARY COUNSEL AND
WEST VIRGINIA LAWYER DISCIPLINARY BOARD,
Respondents

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED AS MOULDED

Submitted: April 16, 2013
Filed: June 7, 2013

Lonnie C. Simmons, Esq.
DiTrapano, Barrett, DiPiero, McGinley & Simmons, P.L.L.C.
Charleston, West Virginia
Attorney for Petitioner

Jessica H. Donahue Rhodes, Esq.
Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Attorney for Respondents

JUSTICE LOUGHRY delivered the Opinion of the Court.

1.      "In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."  Syl. Pt. 1, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979).

2.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syl. Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

3.      A circuit court's denial of a motion to disqualify an attorney in a pending case based upon an alleged conflict of interest in representing a client does not foreclose disciplinary action against that attorney based upon that alleged conflict of interest. The circuit court's denial of the motion to disqualify merits consideration in the

determination of whether discipline should be imposed. However, whether the attorney's conduct warrants professional discipline is a separate issue, and this Court will exercise its own independent judgment in determining whether sanctions are warranted.

4. "'Rule 1.9(a) of the Rules of Professional Conduct, precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interest of the former client unless the former client consents after consultation.' Syllabus point 2, *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993)." Syl. Pt. 4, *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W.Va. 148, 697 S.E.2d 740 (2010).

5. "Under Rule 1.9(a) of the Rules of Professional Conduct, determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations." Syl. Pt. 3, *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993).

6. "'Under West Virginia Rule of Professional [Conduct] 1.9(a), a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as counsel if (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve

ii

the use of information acquired in the course of representing the former client, unless that information has become generally known.' Syllabus point 1, *State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001)." Syl. Pt. 8, *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W.Va. 148, 697 S.E.2d 740 (2010).

LOUGHRY, Justice:

This case is before this Court upon a petition for a writ of prohibition filed by the petitioner, Michael T. Clifford, seeking to prevent the respondents, the West Virginia Office of Disciplinary Counsel and the West Virginia Lawyer Disciplinary Board, from pursuing a disciplinary action against him based upon an alleged conflict of interest in representing a client. Upon consideration of the parties' briefs and argument, the submitted appendix, and the pertinent authorities, the writ of prohibition is hereby granted as moulded.

## I. Factual and Procedural Background

By letter dated April 22, 2011, the petitioner was informed by the respondents that a complaint had been opened against him to investigate a potential conflict of interest he might have in representing an individual named Sandra Shaffer.[1] Ms. Shaffer had retained the petitioner to represent her in connection with personal and real property damage she allegedly sustained as a result of the execution of a warrant by the police departments of the City of Charleston and Kanawha County, West Virginia, in what has been referred to as the "sniper investigation." The sniper investigation began in 2003 following the deaths of three persons at various locations in Kanawha County as a result of gunshots fired by an unknown

---

[1]During oral argument, counsel for the respondents stated that the Office of Lawyer Disciplinary Counsel became aware of the petitioner's representation of Ms. Shaffer through articles that appeared in local newspapers.

1

assailant. When the sniper investigation began in 2003, the petitioner was the Kanawha County Prosecuting Attorney. When the petitioner left that office in 2004, no person had been charged with the homicides.[2]

On June 3, 2011, the petitioner filed a civil complaint in the Circuit Court of Kanawha County on behalf of Ms. Shaffer against the City of Charleston, the Kanawha County Commission, James Hunt, David H. Armstrong, and John Doe[3] (hereinafter referred to collectively as "the defendants"). The complaint alleged that the defendants had destroyed and damaged Ms. Shaffer's personal and real property during the execution of a search warrant on March 28, 2011, in the sniper investigation.

Thereafter, on July 6, 2011, the defendants filed a motion with the circuit court seeking to disqualify the petitioner from representing Ms. Shaffer in the case. After the matter was fully briefed and argued by the parties, the circuit court entered an order on September 13, 2011, denying the motion. The order stated, in pertinent part:

> The Court finds, as a matter of law, that the Defendants have not met the burden of the substantial relationship test to show a

---

[2]The petitioner was the Prosecuting Attorney for Kanawha County from January 1, 2001, until December 31, 2004.

[3]The complaint stated, "Defendant John Doe collectively refers to members of the Kanawha County Sheriff's Department who provided security for the events hereinafter complained. The names of the individual defendants John Doe are unknown to the plaintiff and are sued only in their capacity(ies) as employees of the Kanawha County Commission."

> nexus between the sniper case (which is criminal in nature) and the civil suit filed by Mrs. Shaffer, so as to render Mr. Clifford disqualified. The Court further finds, as a matter of law, that the Defendants have not shown a genuine adverse interest so as to render Mr. Clifford disqualified from representing Mrs. Shaffer.

To date, the order has not been appealed nor have the defendants sought extraordinary relief from this Court.

Subsequently, on or about December 28, 2011, Ms. Shaffer filed a pro se motion with the circuit court seeking to discharge the petitioner and the other attorneys in his office from her case. On March 8, 2012, the circuit court entered an order relieving the petitioner and the other attorneys in his office from any further representation of Ms. Shaffer.[4]

On July 5, 2012, the petitioner received another letter from the respondents with a document entitled "Lawyer Disciplinary Board Investigative Panel Closing." The letter advised the petitioner that the complaint against him would be closed with an admonishment unless he filed an objection within fourteen days. The petitioner responded by filing an objection. Thereafter, on September 24, 2012, the respondents issued a Statement of Charges against the petitioner asserting that he had a conflict of interest in

---

[4]Ms. Shaffer's case has not been resolved; she continues to represent herself in the matter.

3

representing Ms. Shaffer and had violated the Rules of Professional Conduct.[5] The petitioner

then filed his petition for a writ of prohibition with this Court.[6]

## II.  Standard for Issuance of Writ of Prohibition

The standard for determining when a writ of prohibition should be issued is set

forth in syllabus point one of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), which

states:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

With regard to disciplinary proceedings, this Court has advised that "a writ of prohibition is

an extraordinary remedy that is seldom granted in legal ethics matters." *State ex rel. Scales*

*v. Committee on Legal Ethics of the West Virginia State Bar*, 191 W.Va. 507, 512, 446

---

[5]The Statement of Charges was filed pursuant to Rule 2.9(c) of the Rules of Lawyer Disciplinary Procedure which provides, in pertinent part: "If . . . respondent files a timely objection to the written admonishment, the Investigative Panel shall file a formal charge with the Clerk of the Supreme Court of Appeals."

[6]By order dated December 11, 2012, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board stayed the disciplinary proceeding pending the resolution of this case.

S.E.2d 729, 734 (1994). Yet, where circumstances are sufficient, such a writ will be granted. *Id.* With this standard in mind, the parties' arguments will be considered.

## III.  Discussion

### A.  Disqualification and Disciplinary Action Based on Alleged Conflict of Interest

The petitioner contends that the respondents do not have any authority to pursue disciplinary action against him because the circuit court in the underlying civil case that gave rise to the ethics violation charges ruled that he had no conflict of interest in representing Ms. Shaffer. The petitioner argues that the circuit court was authorized to determine whether he had a conflict of interest pursuant to this Court's decision in *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991), and that once the court determined that no conflict existed, the respondents were bound by that decision and had no basis to continue to pursue the ethics violation charges against him. The petitioner asserts that in moving forward with the disciplinary proceeding, the respondents are essentially "acting as an appellate court with regard to the decision made by the circuit court."

In addition, the petitioner contends that the respondents' attempt to relitigate the circuit court's final and binding decision on whether he had a conflict of interest is barred by the doctrines of res judicata and collateral estoppel. The petitioner says that to permit the disciplinary action to proceed would establish dangerous precedent and would place attorneys in a "no-win" situation because, like him, they could be confronted with an ethics

violation charge based on an alleged conflict of interest even though a circuit court has ruled that no such conflict exists. The petitioner maintains that the circuit court correctly applied the Rules of Professional Conduct in finding that he had no conflict.

To the contrary, the respondents argue that they have the authority to pursue disciplinary action against the petitioner notwithstanding the circuit court's ruling that there was no conflict of interest preventing him from representing Ms. Shaffer. In that regard, the respondents point out that *Garlow* emphasized that it is this Court, rather than trial courts, that has the authority to regulate and control the practice of law. The respondents contend that because this Court has exclusive jurisdiction in all disciplinary matters, the circuit court's ruling regarding a motion for disqualification is not dispositive as to whether there has been a violation of the Rules of Professional Conduct that warrants sanctions. The respondents do not assert that the circuit court overstepped its authority in making its determination, but maintain that because exclusive jurisdiction with regard to all ethics matters lies with this Court, they have the authority to move forward with disciplinary proceedings.

In support of their argument, the respondents rely upon *Committee on Legal Ethics v. Frame*, 189 W.Va. 641, 433 S.E.2d 579 (1993), a case in which this Court publicly reprimanded an attorney for violating Rule 1.7(a) of the Rules of Professional Conduct,

6

which prohibits attorneys from representing clients with adverse interests.[7] Even though an oral motion to disqualify the attorney's law firm based upon the alleged conflict of interest was denied by the circuit court in the underlying case, this Court found that sanctions[8] for a violation of the Rules of Professional Conduct were warranted. The respondents contend that *Frame* is directly on point with the case *sub judice* and establishes that disciplinary proceedings may be pursued against an attorney for an alleged conflict of interest in representing a client, even if a circuit court has ruled otherwise.

The respondents further assert that the doctrines of res judicata and collateral estoppel have no application in this instance. In support of their argument with respect to res judicata, the respondents rely upon *In re Weiss*, 954 N.E.2d 19 (Mass. 2011), a case in which an attorney asserted res judicata where the misconduct that led to the disciplinary proceedings against him was the same conduct that the attorney was sanctioned for in the lower court. In *Weiss*, the Massachusetts court found that res judicata did not apply because

---

[7]Rule 1.7(a) of the Rules of Professional Conduct states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents after consultation.

[8]In addition to a public reprimand, the attorney was also assessed the costs of the disciplinary proceeding. *Frame*, 189 W.Va. at 646, 433 S.E.2d at 584.

disciplinary counsel was not a party to the underlying case and had no right to join in the proceedings below. 954 N.E.2d at 21. The respondents note that the same is true here. They were not a party to the underlying action, nor would they have been allowed to intervene in the case. For the same reason, the respondents assert that collateral estoppel does not apply because "[a] fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim." Syl. Pt. 8, *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). Finally, the respondents argue that the matter of disqualification of an attorney from a case as a result of a conflict of interest concerns the administration of justice whereas the disciplinary process involves the regulation of attorneys and the protection of the public. Therefore, the respondents also reason that the doctrines of res judicata and collateral estoppel do not apply because the issues in the proceedings are not identical.

Upon consideration of the parties' arguments and the pertinent authorities, we reject the petitioner's contention that the respondents may not pursue a disciplinary action against an attorney based upon an alleged conflict of interest in representing a client when a circuit court has previously found no basis to disqualify the attorney from a pending case due to the alleged conflict. In reaching this conclusion, we are mindful of the fact that this Court recognized in *Garlow* that circuit courts have inherent authority to disqualify an attorney from a pending case based upon an alleged conflict of interest. Syllabus point one of *Garlow* provides:

8

> A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.

186 W.Va. at 458, 413 S.E.2d at 113. However, as noted by the respondents, we reiterated in *Garlow* that "it is *this* Court, and not the trial court, that has the authority to define, regulate, and control the practice of law[.]" 186 W.Va. at 461, 413 S.E.2d at 116; *see also* Syl. Pt. 1, *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982) ("The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals."). As the *Frame* case demonstrates, there can be circumstances where a circuit court for various reasons may not disqualify an attorney from a case based upon an alleged conflict of interest, but when that attorney's conduct is considered by this Court in the context of disciplinary proceedings, it becomes clear that sanctions are warranted.

In *Frame*, the disciplinary proceeding was brought because an attorney represented a corporation's controlling shareholder in her divorce action at the same time his firm was representing a plaintiff in a personal injury suit against the divorce client's corporation. The potential conflict of interest was not realized until shortly before trial was scheduled to begin in the personal injury action. The attorney was made aware of the

9

potential conflict by an associate in his firm who made the discovery after being assigned work in both cases. The attorneys then researched the issue and concluded that there was no conflict because their firm had sued the corporate entity rather than their divorce client, personally. Because the attorney believed that no conflict existed, the matter was not discussed with the divorce client or the client in the personal injury action. However, on the day trial was scheduled to begin in the personal injury action, opposing counsel, who was informed about the potential conflict by the divorce client who had also recently discovered the dual representation, orally moved to disqualify the attorney's law firm. The trial court denied the motion, finding that no confidential information had been disclosed and that the motion was untimely. The personal injury action proceeded and was ultimately settled. Thereafter, the attorney's divorce client filed an ethics complaint with the State Bar. 189 W.Va. at 643, 433 S.E.2d at 581. Despite the fact that the circuit court ruled that there was no basis to disqualify the attorney in the personal injury action because no confidential information had been disclosed, this Court nonetheless ordered a public reprimand against the attorney finding that the dual representation violated Rule 1.7(a) of the Rules of Professional Conduct. *Id*. at 644, 433 S.E.2d at 582.

*Frame* illustrates that the focus of a motion to disqualify an attorney based upon an alleged conflict of interest is whether the alleged conflict will result in prejudice to one of the parties such that it is necessary for the administration of justice to remove an attorney from the case. In *Garlow*, this Court discussed the fact that disqualification is a

drastic measure because it deprives parties of representation by counsel of their own choosing and cautioned circuit courts that it should only be imposed when absolutely necessary. 186 W.Va. at 461, 413 S.E.2d at 116. To that end, the circuit court in the underlying action in *Frame* denied the motion to disqualify because it was undisputed that no confidential information had been disclosed and that removal of the attorney from the case at the stage of the proceedings when the disqualification motion was made (the day the trial was scheduled to begin) would have caused substantial delay.

By contrast, when the attorney's actions were considered by this Court in the subsequent disciplinary proceeding, we explained that

> the results of simultaneous representation are not dispositive of the determination as to whether an ethical violation has occurred, [but] the fact that no negative consequences were suffered certainly merits consideration in our determination of the appropriate discipline for such violation.

*Frame*, 189 at 645 n.1, 433 at 583 n.1. This Court recognized in *Frame* that no actual harm had occurred as a result of the dual representation, but concluded there was a violation of the Rules of Professional Conduct because

> [t]he only prerequisites for the establishment of an ethical violation [of Rule 1.7(a)] are those clearly set forth in the rule itself; namely, representation of one client that is "directly adverse" to another client without the consent of each client. The "directly adverse" language does not imply that a bad result must occur before representation is impermissible. It is the interests of the clients with which the rule is concerned, not the result obtained.

11

*Id*. at 644-45, 433 S.E.2d at 582-83. Moreover, it was observed in *Frame* that the representation of the personal injury client entailed the cross-examination of the divorce client, resulting in the potential

> (1) to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness; and (3) to present a tension between the lawyer's own pecuniary interest in continued employment by the client-witness and the lawyer's ability to effectively represent the litigation client.

*Id.* at 645, 433 S.E.2d at 583 (citation omitted). This Court explained that because simultaneous representation presents these potential outcomes, it constitutes a violation of Rule 1.7(a) regardless of whether actual harm occurs. *Id.*

In examining the conduct that led to the disciplinary proceeding in *Frame*, this Court's analysis went beyond whether the alleged conflict was actually preventing the administration of justice because there would be a prejudicial impact or an exchange of confidential information. As in all the disciplinary proceedings, this Court was looking "'to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]'" *Lawyer Disciplinary Bd. v. Albright*, 227 W.Va. 197, 204, 706 S.E.2d 552, 559 (2011) (quoting *Committee on Legal Ethics v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994)); *see also* Syl. Pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987) ("In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only

what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession."). Accordingly, whether an attorney's conduct warrants professional discipline because it violates the Rules of Professional Conduct is a separate issue from whether an attorney should be disqualified from a case because of a conflict of interest that will prevent the administration of justice. Because circuit courts have no authority to impose disciplinary sanctions upon attorneys, their decisions on motions to disqualify based on an alleged conflict of interest are not dispositive with regard to whether disciplinary action is required.

The petitioner's argument that allowing the respondents to move forward with disciplinary proceedings in these circumstances allows them to "act as an appellate court over circuit court judges" is misplaced. This Court has explained that

> [t]he [Lawyer Disciplinary] Board began as the Committee on Legal Ethics of the West Virginia State Bar. "[A]s an administrative arm of the Supreme Court of Appeals, [the Board] is subject to the exclusive control and supervision of the Supreme Court of Appeals, including the approval of all regulatory and adjudicatory activities regarding attorney disciplinary proceedings." *Daily Gazette Co., Inc. v. Committee on Legal Ethics*, 174 W.Va. 359, 362, 326 S.E.2d 705, 709 (1984). "In the exercise of this plenary authority to regulate and control the practice of law, we have delegated to the [Board] certain administrative, investigative, and adjudicatory functions." *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 288, 452 S.E.2d 377, 379 (1994). The delegation of certain

13

administrative, investigative and adjudicatory functions is a method of assisting the Court.

> While the findings and recommendations of the Board are generally accorded great weight by the Court, they are viewed as only advisory. The findings and recommendations are not binding upon this Court. The Court retains the power to approve or disapprove any regulation or practice adopted by the Board, inquire into the merits of any disciplinary proceeding, and to take any action the Court sees fit in such matters.

*Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 564, 505 S.E.2d 619, 627 (1998). Simply put, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984); *see also* Syl. Pt. 3, in part, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994) ("[T]his Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment."). Therefore, because it is this Court that makes the ultimate decision on the imposition of disciplinary sanctions, the petitioner's assertions that respondents are exercising appellate authority over the circuit court is without merit.

We also find no merit to the petitioner's contention that the respondents are precluded from pursuing disciplinary proceedings by the doctrines of res judicata and collateral estoppel. The prerequisites for application of these doctrines are well established.

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First,

14

there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997).

Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). In order for either res judicata or collateral estoppel to apply, the party against whom the doctrine is invoked must have been a party in the prior action or in privity with a party in the prior action. Recognizing that the respondents were not parties in the underlying civil proceeding, the petitioner argues that the doctrines apply nonetheless because the respondents and the circuit court are in privity with each other as both have the authority to determine whether an attorney has a conflict of interest in violation of the Rules of Professional Conduct. We disagree.

With regard to privity, this Court has explained:

15

"Privity is not established . . . from the mere fact that persons may happen to be interested in the same question or in proving the same facts." 46 Am.Jur.2d *Judgments* § 532 (1969). While the concept of privity is difficult to define precisely, it has been held that "a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity." *BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 198 (Ky.App.1984). This consideration is to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceedings. *See BTC Leasing Inc.*, *supra*; 46 Am.Jur.2d *Judgment*s § 532.

*Miller,* 194 W.Va. at 13, 459 S.E.2d at 124. Stated more generally,

[p]rivity requires the interests of a party against whom claim or issue preclusion is asserted were represented adequately by the party's purported privity at the initial hearing or trial. The absolute identicality of legal issues is fundamental to a finding of privity, and the mere fact that the two parties are interested in proving or disproving the same facts alone will not create privity.

*Id.* at 13 n.16, 459 S.E.2d at 124 n.16. As discussed above, the separate question of whether the attorney's conduct warrants professional discipline is not a decision that the circuit court is authorized to make when ruling upon a motion for disqualification based upon an alleged conflict of interest. Therefore, the petitioner's claim that privity exists fails because of the absence of absolute identicality of legal issues. The doctrines of res judicata and collateral estoppel simply do not apply.

Accordingly, based on all the above, we now hold that a circuit court's denial of a motion to disqualify an attorney in a pending case based upon an alleged conflict of

16

interest in representing a client does not foreclose disciplinary action against that attorney based upon that alleged conflict of interest. The circuit court's denial of the motion to disqualify merits consideration in the determination of whether discipline should be imposed. However, whether the attorney's conduct warrants professional discipline is a separate issue, and this Court will exercise its own independent judgment in determining whether sanctions are warranted. Contrary to the petitioner's assertion, we do not believe our holding today places attorneys in an untenable position. As we cautioned in *Frame,*

> [f]or their own protection from charges of ethical violations and in consideration of their clients' interests, attorneys should remain mindful of actual or potential conflicts of interest . . . . Any doubt regarding whether a conflict exists should be resolved in favor of informing the client(s) of the concerns and allowing the client(s) an opportunity to consent to continued representation or to seek new counsel.

189 W. Va. at 646, 433 S.E.2d at 584.

### B. Sanctions not Warranted

While we have found that the respondents were not foreclosed from moving forward with the disciplinary proceedings against the petitioner, based upon our examination of the record in this matter, we further find that sanctions are not warranted in this instance. The facts and circumstances that gave rise to the ethics violation charges against the petitioner are sufficiently set forth in the appendix record submitted in this case and,

17

importantly, are not in dispute.  Allowing the respondents to proceed when the charges are

without merit would needlessly duplicate the efforts and costs of the parties and would not

promote judicial economy.   Therefore, for the reasons set forth below, we direct the

respondents to dismiss the Statement of Charges issued against the petitioner.


The petitioner has been charged with violating Rules 1.9(a) and 1.11(a) of the

Rules of Professional Conduct as a result of his representation of Ms. Shaffer.  Rule 1.9

states:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation[.]

Rule 1.11 provides:

> (a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom;  and
> (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

The respondents contend that the petitioner violated these rules because he was the prosecuting attorney for Kanawha County in 2003 when the sniper shootings occurred and was briefed regularly upon the investigation. He then undertook representation of Ms. Shaffer in a 2011 lawsuit against the City of Charleston and the Kanawha County Commission alleging destruction of property resulting from the execution of a warrant in the sniper investigation. The petitioner did not seek consent from the City of Charleston and the Kanawha County Commission prior to undertaking representation of Ms. Shaffer.

In response to the charges, the petitioner has pointed out that he undertook representation of Ms. Shaffer in a civil action, not a criminal matter, that was filed almost seven years after he ceased serving as prosecutor. He states that although the alleged property destruction occurred as a result of the execution of a warrant in the sniper investigation, there is absolutely no evidence that Ms. Shaffer's interests were materially adverse to the interests of the State of West Virginia in investigating and prosecuting the sniper case. The petitioner maintains that his limited involvement in the sniper investigation was not related to the destruction of Ms. Shaffer's property which led to the filing of her civil lawsuit to recover monetary damages. The petitioner also asserts that there was no evidence that he gleaned any information while serving as Kanawha County prosecutor that could have been utilized in litigating Ms. Shaffer's claim that was not otherwise available.

In considering alleged violations of Rule 1.9, this Court has explained that

19

"Rule 1.9(a) of the Rules of Professional Conduct, precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interest of the former client unless the former client consents after consultation." Syllabus point 2, *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993).

Syl. Pt. 4, *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W.Va. 148, 697 S.E.2d 740

(2010). Similarly, we have recognized that

Rule 1.11 of the Rules of Professional Conduct prohibits lawyers, including prosecuting attorneys and their assistants, from representing private clients in connection with any "matter in which the lawyer has participated personally and substantially as a public officer or employee."

*State ex rel. Bailey v. Facemire*, 186 W.Va. 528, 533-34, 413 S.E.2d 183, 188-89 (1991).

We have further observed that

[u]nder Rule 1.9(a) of the Rules of Professional Conduct, determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations.

Syl. Pt. 3, *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993).

The same holds true with regard to Rule 1.11(a) given that a prerequisite for prohibiting representation under Rule 1.11(a) is also prior participation in a substantially related matter. Such an analysis in the case *sub judice* reveals that the petitioner's participation in the sniper investigation, which was essentially limited to updates on the progress of investigators, was not substantially related to the civil suit he filed on behalf of Ms. Shaffer. In fact, there is no evidence that it was even remotely related to the civil suit.

20

In syllabus point eight of *Bluestone*, this Court held:

> "Under West Virginia Rule of Professional [Conduct] 1.9(a), a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as counsel if (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known." Syllabus point 1, *State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001).

Upon review, we find that the first element of the substantial relationship test is not satisfied for purposes of finding a violation of Rule 1.9(a) because the defendants sued by the petitioner on behalf of Ms. Shaffer are not his former clients. This Court has explained that

> the prosecuting attorney is elected by the people of the county to represent them in prosecutions against criminal offenders. . . . The prosecuting attorney is a constitutional officer who exercises the sovereign power of the State at the will of the people and he is at all times answerable to them. W. Va. Const. art. 2, § 2; art. 3, § 2; art. 9, § 1. In other words, . . . the prosecuting attorney is the trustee and servant of the people.

*State ex rel. Preissler v. Dostert*, 163 W.Va. 719, 732-33, 260 S.E.2d 279, 287 (1979). As such, when the petitioner was serving as the prosecuting attorney of Kanawha County, his client in all criminal cases was the people of the State of West Virginia, not the City of Charleston, not the Kanawha County Commission and not the members of their police departments–the defendants he sued on behalf of Ms. Shaffer.[9] Thus, even if we were to

---

[9]We, of course, recognize that there are instances where the prosecuting attorney's duties include

21

assume that the petitioner was actively involved in the sniper investigation when he served as the Kanawha County prosecutor, he simply did not act as an attorney in any capacity for the defendants sued by Ms. Shaffer such that they could be considered his former clients. Therefore, the petitioner has not violated Rule 1.9(a) of the Rules of Professional Conduct.

Continuing our substantial relationship analysis for purposes of Rule 1.11(a), which does not have a former client component, we are unable to find that the petitioner's representation of Ms. Shaffer involved any work he undertook as a prosecutor in relation to the sniper case. In that regard, the record reflects that while the petitioner received updates from investigators in the sniper case and may have even participated in news conferences related to the shootings, the fact is that he never instituted any proceedings to prosecute because no suspect was identified while he was in office. For the same reason, we are unable to find that the petitioner obtained any information while he was prosecutor that was not otherwise generally known that would have aided him in his representation of Ms. Shaffer.

---

> attend[ing] to civil suits in such county in which the State, or any department, commission or board thereof, is interested, and to advise, attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceedings in which such county or any county board of education is interested.

W. Va. Code § 7-4-1 (2010). However, in this case, it is the duty of the prosecutor "to attend to the criminal business of the State" that is at issue. *Id.*

22

Consequently, the petitioner has not violated Rule 1.11(a) of the Rules of Professional Conduct.

## IV.  Conclusion

Accordingly, based on all the above, the requested writ is hereby granted as moulded.  The respondents are hereby directed to dismiss the Statement of Charges issued against the petitioner on September 24, 2012.

Writ granted as moulded.

23